IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KARL PETKOVICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-cv-923-WHA-WC |
| | ) | |
| | ) | (WO) |
| THE CITY OF MONTGOMERY, | ) | |
| ALABAMA, JAMIE REYNOLDS, in | ) | |
| his individual capacity, and GARY | ) | |
| HICKS, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This action is before the court on Defendant the City of Montgomery's Motion to

Dismiss for Failure to State a Claim (Doc. # 19) filed on October 27, 2014.  Also before the court

are Plaintiff Karl Petkovich's Response to the Motion (Doc. # 21) and the City of Montgomery's

Reply thereto (Doc. # 22).

Plaintiff filed his original Complaint against the City of Montgomery ("the City") and

police officers Jamie Reynolds and Gary Hicks ("the individual Defendants") alleging

unreasonable seizure, malicious prosecution, and failure to train/supervise (as to the City) on

September 4, 2014.  The City responded with its first Motion to Dismiss for Failure to State a

Claim on October 1, 2014.  In response, Plaintiff moved to be able to file his Amended

Complaint.[1]  The court granted that motion on October 23, 2014 and denied the first Motion to

---

[1] The court notes that Plaintiff's Amended Complaint "adopts and realleges each paragraph of his original
Complaint [Doc. 1], as if fully set forth herein."  (Doc. # 17 at 1 ¶ 1.)  The court cautions Plaintiff's counsel that this
is a violation of M.D. Ala. Local Rule 15.1, which provides that any amendment "must, except by leave of Court,

Dismiss as moot.  The City then filed the second Motion to Dismiss at issue here.  The individual Defendants have not responded to either the original or Amended Complaint.

For the reasons to be discussed, the City's Motion is due to be GRANTED.

## II. STANDARD OF REVIEW

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

## III. FACTS

The Plaintiff alleges the following facts:

Until the events underlying this litigation occurred, Plaintiff was employed as a City of Montgomery police officer.  On August 6, 2002, he was asked to come to the Montgomery Police Department and surrender his badge and weapon.  Plaintiff was interviewed, then

reproduce the entire pleading, document or other papers as amended, and may not incorporate any prior pleading, document or other papers by reference."

transported to his home.  His home was searched pursuant to a search warrant and his personal

computer was seized.  The investigatory interview, warrant, and search were based on suspicions

that Plaintiff had "sent and/or received salacious images to and/or from a female under the age of

eighteen years."  (Doc. # 1 at 3 ¶ 10.)  Later in the same month, Defendants Reynolds and Hicks

(also police officers) and Lt. John McCall came to Plaintiff's home, entered without a warrant,

and seized Plaintiff's and his wife's firearms from a locked safe.  In September, police

department employees released statements about the allegations to the media despite Plaintiff's

petition to the District Court to prevent false information from being released.  After a hearing in

Montgomery County Circuit Court, Plaintiff was terminated.  The Mayor of Montgomery made

statements to the public to the effect that Plaintiff was terminated because child pornography was

found on Plaintiff's personal computer.

Plaintiff was indicted on two misdemeanor counts, Contributing to the Delinquency of a

Minor and Distributing Materials Harmful to Minors, on June 12, 2003.  The completion of his

criminal case, by agreement with the Montgomery County District Attorney, was delayed while

Plaintiff deployed to Iraq on active military duty.  Plaintiff returned in February 2005, and the

following month the Distributing Materials Harmful to Minors charge was nolle prossed, on

March 23, 2005.  Two days later, Plaintiff pled guilty, best interest plea with no admission of

guilt, to the Contributing to the Delinquency of a Minor Charge.  He pled guilty because he was

scheduled to relocate for a United States Army position and could not do so while the case was

pending.

The underlying evidence in the criminal prosecution consisted of images found on

Plaintiff's computer, but a witness for the State "testified that the metadata contained in the

image indicated that the image was created or modified on August 21, 2002—fifteen days after

3

the disc had been confiscated by the City." (Doc. # 1 at 4 ¶ 20.)  The City and its agents were aware that evidence had been fabricated and continued with the prosecution nonetheless.

After the Plaintiff petitioned for post-conviction relief, the trial court found that Plaintiff had been indicted after the applicable statute of limitations had run, meaning that the court had no jurisdiction to accept Plaintiff's plea.  After the State appealed, the Alabama Court of Criminal Appeals affirmed the trial court's decision.

## IV. DISCUSSION

### A.  Count I: § 1983 Unreasonable Seizure in Violation of the Fourth Amendment

The Amended Complaint alleges that the Defendants' prosecution of Plaintiff was based on fabricated evidence and resulted in the "seizure and effective detention" of his person[2] when he returned from military duty.  (Doc. # 17 at 2–3 ¶ 10.)  Among other allegations under this claim, the Amended Complaint further states that "[t]he City of Montgomery directed this prosecution of the plaintiff, and/or it was a policy or custom of the City which resulted in the deprivation of plaintiff's rights."  (*Id.* at 3 ¶ 13.)   The City argues that this claim should be dismissed because "Plaintiff has offered nothing but conclusory allegations regarding a custom or policy of the City," and because Plaintiff "offered no facts to support his allegation that such a custom existed."  (Doc. # 19 at 3 ¶ 6.)  Although the court allowed the Plaintiff to file an Amended Complaint after the City's first Motion to Dismiss, the only rebuttal Plaintiff offers relevant to Count I is the assertion that he "has stated all of the elements necessary to prove a violation of his rights" that is actionable under § 1983.  (Doc. # 21 at 3.)

---

[2] Plaintiff's original Complaint included an allegation of unreasonable seizure of property, assumedly regarding firearms personally taken from his home.  The court deems this property seizure claim abandoned because it is not included in the Amended Complaint.  Even if the claim were not abandoned, the court agrees with the City's contention that such a claim would be barred by Alabama's two-year residual statute of limitations.  *See McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (constitutional claims brought under § 1983 are tort actions and must be brought within two years in Alabama).

Under 42 U.S.C. § 1983, "a municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation;" a municipality cannot be held liable on a theory of respondeat superior liability. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). A plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404. "Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, the Supreme Court has . . . explained that a plaintiff may prove a city policy by showing that the municipality's failure to train [or supervise its employees] evidenced a 'deliberate indifference' to the rights of its inhabitants." *Gold*, 151 F.3d at 1350. To show the requisite "deliberate indifference," "a plaintiff must present some evidence that the municipality knew of a need to . . . supervise in a particular area and the municipality made a deliberate choice not to take any action;" mere negligence will not suffice. *Id.*; *see also Brown*, 520 U.S. at 407 ("A showing of simple or even heightened negligence will not suffice."). Finally, the Plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404.

Here, as to Count I, the Amended Complaint merely alleges in a conclusory fashion that a policy or custom of the City resulted in a constitutional violation. There are no specific facts alleged that support the existence of such a policy or custom. All of the facts alleged are specific to this incident. While Plaintiff may have "stated all of the elements necessary" to sustain such a

claim, "the court is not bound to accept conclusory statements of the elements of a cause of action," *Iqbal*, 556 U.S. at 678–79, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Plaintiff's allegations as to any custom or policy of the City causing a violation of his Fourth Amendment rights do not surpass the pleading threshold required by *Iqbal* and *Twombly*. Therefore, the Amended Complaint, insofar as potential municipal liability is concerned, is legally insufficient as to Count I. The City's Motion to Dismiss this claim is due to be GRANTED.

### B.  Count II: Failure to Train and/or Supervise

Count II of the Amended Complaint alleges, *inter alia*, that "[t]he City's failure to properly train and supervise [the individual Defendants] proximately resulted in the fabrication of incriminating evidence which was used to prosecute the plaintiff for a crime which he did not commit . . . ." (Doc. # 17 at 4 ¶ 18.) The City argues that, as with the Fourth Amendment unreasonable seizure claim, "Plaintiff has offered nothing but conclusory allegations regarding a custom or policy of the City as to its failure to train." (Doc. # 19 at 4 ¶ 11.)

"A city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009). This "may include a failure to provide adequate training if the deficiency 'evidences a deliberate indifference to the rights of [the city's] inhabitants.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). To set out a cognizable failure to train claim, a plaintiff must "'present some evidence that the municipality knew of a need to train . . . in a particular area and the municipality made a deliberate choice not to take any action.'" *Gold*, 151 F.3d at 1350. This requirement is "intentionally onerous for plaintiffs" because "imposing liability on a municipality without proof that a specific policy caused a particular violation would

equate to subjecting the municipality to respondeat superior liability—a result never intended by section 1983." *Id.* at 1351 n.10.

Notice, that is, the fact that the municipality knew of a need to train, can be established in two ways. "First, if the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent." *Lewis*, 561 F.3d at 1293. Second, "deliberate indifference may be proven without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious." *Id.* This second category is a narrow one—after the Supreme Court set out the hypothetical example of an obvious need for training as to the use of deadly force in *Harris*, courts have not expanded the category of the "narrow range of circumstances" in which a constitutional violation is so predictable as to provide notice without repeated incidents. *See, e.g.*, *Gold*, 151 F.3d at 1352 (quoting *Brown*, 520 U.S. at 409).

In addition, the City argues that it is "entitled to rely on its officers' common sense" when it comes to assessing the need for training, and that "common sense would dictate that an officer cannot fabricate evidence of a crime." (Doc. # 19 at 4–5 ¶ 12; *see also Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1314 (S.D. Ala. 2011).) Plaintiff responds that "[a]n issue so well established and so fundamental absolutely should be a subject of training and supervision in the Montgomery police department," but that "either there is no such training, or it is ineffective." (Doc. # 21 at 4.) To support this argument, Plaintiff alludes to an Eleventh Circuit case in which the plaintiff alleged that Montgomery police officers planted cocaine in his vehicle. *Riley v. City of Montgomery*, 104 F.3d 1247, 1250 (11th Cir. 1997). Aside from the fact that the underlying events in *Riley* occurred almost twenty years ago, Plaintiff did not allege or even mention the facts of *Riley* in his Amended Complaint. Plaintiff amended his Complaint in

response to the City's first Motion to Dismiss, which set forth the same arguments as the instant Motion (*i.e.* that one incident is insufficient to establish a failure to train in all but a narrow set of circumstances). (Doc. # 11 at 2 ¶ 5.)  The Amended Complaint has not cured the defect in pleading the failure to train claim from the original Complaint.

In sum, Plaintiff alleges no facts indicating the City was on notice of a need to train officers not to fabricate evidence in criminal cases.  The Amended Complaint mentions no other incidents that would have alerted the City to such a need.  Furthermore, fabrication of evidence is not within the "narrow" category of cases in which "the likelihood for constitutional violation is so high that the need for training would be obvious."  The category is so narrow that "[t]he Eleventh Circuit has repeatedly rejected attempts to extend failure-to-train liability [for single incidents] to other law-enforcement situations, such as the use of 'hobble' restraints, responding to complaints about the use of handcuffs, and the identification and treatment of mentally ill inmates by jail staff."  *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1256 (M.D. Ala. 2010). In light of Eleventh Circuit precedent, this case is not one in which a single incident is sufficient to conclude there was an obvious need for training.

Finally, Plaintiff alleges that "[t]he City's continued prosecution of the plaintiff despite knowledge that the evidence had been fabricated is a ratification of the officers' acts," and that the ratification alongside with "obvious failure to train and supervise" make the City liable for violations of Plaintiff's constitutional rights.  (Doc. # 17 at 4 ¶ 19.)  Ratification is a possible theory for municipal liability in § 1983 cases.  Municipal liability on the basis of ratification occurs "when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). "The final policymaker, however, must

ratify not only the decision itself, but also the unconstitutional basis for it." *Id.* (citing *Gattis v. Brice*, 136 F.3d 724, 727 (11th Cir. 1998) ("A policymaker's approval of an unconstitutional action can constitute unconstitutional county policy only when the policymaker 'approve[s] a subordinate's decision *and the basis for it.*'")); *see also Waters v. City of Geneva*, —F. Supp. 3d—, No. 1:14-CV-236-WKW, 2014 WL 4688458, at *9 (M.D. Ala. Sept. 19, 2014).

Plaintiff has not fleshed out his ratification theory beyond conclusory assertions that the City ratified not only the prosecution of Plaintiff, but the fabrication of evidence. Plaintiff nowhere alleges any supporting facts tending to indicate that City policymakers had reason to know of any evidence fabrication. To the extent Plaintiff has attempted to plead municipal liability on the basis of ratification, the Amended Complaint is legally insufficient to sustain that theory.

The court finds that the Plaintiff has failed to state a claim for failure to train against the City, and therefore the Motion to Dismiss as to Count II is due to be GRANTED.

## C. Count III: State Law Malicious Prosecution

The City argues this claim is categorically foreclosed under Alabama law. Plaintiff's Response offers no rebuttal to this argument. The court finds the City's argument meritorious. The Alabama Supreme Court has held that "a malicious prosecution action cannot lie against a municipality, because a municipality cannot be deemed to act with malice." *Franklin v. City of Huntsville*, 670 So. 2d 848, 850 (Ala. 1995); *see also Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1191 (M.D. Ala. 1999). For this reason, the City's Motion to Dismiss as to this claim is due to be GRANTED.

## V. CONCLUSION

For the stated reasons, it is hereby ORDERED that Defendant City of Montgomery's Motion to Dismiss (Doc. # 19) is GRANTED, and this case is DISMISSED with prejudice as to the City of Montgomery.

DONE this 21st day of January, 2015.

    /s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE