IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KARL PETKOVICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 2:14-cv-923-WHA |
| | ) |
| JAMIE REYNOLDS, in his individual | ) (WO) |
| capacity, and GARY HICKS, | ) |
| in his individual capacity,[1] | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause is before the court on the Defendants' Motion to Dismiss (Doc. # 30) for

failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).[2]

Also before the court are the Plaintiff's Response (Doc. # 34) and the Defendants' Reply thereto

(Doc. # 35).  The court previously dismissed all claims against the City of Montgomery on

January 21, 2015 (Doc. # 23).  This Motion by the remaining individual Defendants followed on

February 24, 2015.  For the reasons to be discussed below, the Defendants' Motion is due to be

GRANTED.

### II. STANDARD OF REVIEW

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*,

467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5

---

[1] Counsel for the Defendants has shown Defendants in the style of the Motion to Dismiss simply as "Reynolds and
Hicks."  The court points out to the attorney that this is the proper way to style a pleading in court.
[2] The Defendants have not specified the subpart of Rule 12(b) upon which they rely.  Based on the arguments and
case law contained in the motion, the court construes it as filed pursuant to Rule 12(b)(6), even though it does not
say so.

F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662*, 678–79 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

### III. FACTS

The Plaintiff alleges the following facts, as summarized by the court in a previous order:

> Until the events underlying this litigation occurred, Plaintiff was employed as a City of Montgomery police officer.  On August 6, 2002, he was asked to come to the Montgomery Police Department and surrender his badge and weapon. Plaintiff was interviewed, then transported to his home.  His home was searched pursuant to a search warrant and his personal computer was seized.  The investigatory interview, warrant, and search were based on suspicions that Plaintiff had "sent and/or received salacious images to and/or from a female under the age of eighteen years."  (Doc. # 1 at 3 ¶ 10.)  Later in the same month, Defendants Reynolds and Hicks (also police officers) and Lt. John McCall came to Plaintiff's home, entered without a warrant, and seized Plaintiff's and his wife's firearms from a locked safe.  In September, police department employees released statements about the allegations to the media despite Plaintiff's petition to the District Court to prevent false information from being released.  After a hearing in Montgomery County Circuit Court, Plaintiff was terminated.  The Mayor of Montgomery made statements to the public to the effect that Plaintiff was terminated because child pornography was found on Plaintiff's personal computer.
>
> Plaintiff was indicted on two misdemeanor counts, Contributing to the Delinquency of a Minor and Distributing Materials Harmful to Minors, on June 12, 2003.  The completion of his criminal case, by agreement with the

Montgomery County District Attorney, was delayed while Plaintiff deployed to Iraq on active military duty. Plaintiff returned in February 2005, and the following month the Distributing Materials Harmful to Minors charge was nolle prossed, on March 23, 2005. Two days later, Plaintiff pled guilty, best interest plea with no admission of guilt, to the Contributing to the Delinquency of a Minor Charge. He pled guilty because he was scheduled to relocate for a United States Army position and could not do so while the case was pending.

The underlying evidence in the criminal prosecution consisted of images found on Plaintiff's computer, but a witness for the State "testified that the metadata contained in the image indicated that the image was created or modified on August 21, 2002—fifteen days after the disc had been confiscated by the City." (Doc. # 1 at 4 ¶ 20.) The City and its agents were aware that evidence had been fabricated and continued with the prosecution nonetheless.

After the Plaintiff petitioned for post-conviction relief, the trial court found that Plaintiff had been indicted after the applicable statute of limitations had run, meaning that the court had no jurisdiction to accept Plaintiff's plea. After the State appealed, the Alabama Court of Criminal Appeals affirmed the trial court's decision.

(Doc. # 23 at 2–4.)

## IV. DISCUSSION

The Plaintiff's original Complaint contained three Counts. The court allowed the Plaintiff to file an Amended Complaint in response to a Motion to Dismiss filed by the City. The Amended Complaint, to which the instant Motion to Dismiss is addressed, deleted a claim for unreasonable seizure of property which had been included in one of those Counts.

At this stage of the case, two of the Plaintiff's original three claims remain. The first, Count I, is styled "Unreasonable Seizure of Plaintiff's Person in Violation of the Fourth Amendment to the United States Constitution" and is brought pursuant to 42 U.S.C. § 1983. (Doc. # 18-1 at 2.) Count II was a claim filed only against the City of Montgomery, and has been dismissed. The second remaining claim, Count III, is labeled as a state law claim for malicious prosecution. (Doc. # 18-1 at 4.) The court will discuss each of the two remaining claims in turn.

**A. Plaintiff's § 1983 Claim**

    **1. Pleading Standard**

Before proceeding to the substantive claims, the court must address the threshold question of whether there is a heightened pleading standard in § 1983 cases. The Defendants claim in their Motion to Dismiss that the Eleventh Circuit uses a heightened pleading standard requiring "a § 1983 plaintiff to allege with some specificity the facts which make out its claim." (Doc. # 30 at 2 ¶ 3 (quoting *GJR Invs. v. Cnty. of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998)). However, as recognized by the Plaintiff's counsel in brief, this heightened pleading standard no longer exists. Instead, as stated earlier, § 1983 claims are governed by the standards set forth in *Twombly* and *Iqbal*. *See Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) ("Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*."). While one panel decision shortly after *Randall* did employ the heightened pleading standard, the consensus in the Eleventh Circuit is that *Randall* is controlling precedent and motions to dismiss in cases of this type are to be governed by *Twombly* and *Iqbal*. *See Washington v. Albright*, 814 F. Supp. 2d 1317, 1320–24 (M.D. Ala. 2011) (summarizing the history of the heightened pleading requirement and concluding that the *Randall* approach was the law of the circuit); *see also Cole v. City of Tarrant*, No. 2:14-CV-1737-VEH, 2014 WL 6453910, at *5 (N.D. Ala. Nov. 17, 2014) (following *Randall* in deciding a motion to dismiss in which qualified immunity was raised).

For these reasons, the court will not employ the pleading standard set forth in *GJR*, as Defendants' counsel argues, since that standard is now outdated under more recent case law. Instead, the court will apply the pleading standard set forth in *Twombly* and *Iqbal*, as described above.

### 2.  Substance of Claim

In support of their Motion to Dismiss the Plaintiff's § 1983 claim, the Defendants argue that they never "initiated a legal proceeding" against the Plaintiff, and that because his prosecution was initiated through an indictment, the Defendants did not themselves effect any seizure of the Plaintiff's person, let alone an unreasonable and unconstitutional seizure.  Because of these facts, the Defendants assert, they are entitled to qualified immunity and the claim should be dismissed.  In response, the Plaintiff argues that the Complaint sufficiently alleges that the Defendants terminated his employment, seized his personal property, and fabricated incriminating evidence on his computer; all of which combined constitutes a claim for unreasonable seizure in violation of the Fourth Amendment.  For the reasons to be discussed below, the court finds that the Plaintiff has not made a legally sufficient claim that the Defendants effected an unreasonable seizure of his person.

The Eleventh Circuit has recognized malicious prosecution as a Fourth Amendment violation cognizable as a § 1983 claim.  *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).  It appears that this is the type of claim set forth in the Amended Complaint, as the Plaintiff pleads that "Defendants initiated a judicial proceeding against the plaintiff without probable cause, and yet with malice."[3] (Doc. # 18-1 at 2 ¶ 9.)  To make out such a claim, the Plaintiff "must prove two things: (1) the elements of the common law tort of malicious prosecution; *and* (2) a violation of his Fourth Amendment right to be free from unreasonable seizures."  *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010).  The Eleventh Circuit has set out the

---

[3] While the Plaintiff does specifically allege that Defendant Reynolds took weapons from his home without a warrant during the month following the seizure of his computer, his § 1983 claim is not labeled or pled as a claim for unreasonable seizure of his personal property or as an unreasonable search.  The court infers that this unreasonable seizure claim, labeled as unreasonable seizure of the person, is intended to be the malicious prosecution variety of Fourth Amendment claim, as the Plaintiff has not alleged false arrest or excessive force and relies heavily on the allegation that the Defendants "instituted a judicial proceeding" against him for the purposes of both his § 1983 claim and his state law claim.

elements of the first prong of the test, the common law tort of malicious prosecution, as follows: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 881–82 (citing *Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998)).  The court notes, as did the panel in *Wood*, that these are also the required elements in Alabama for the state law tort of malicious prosecution.  *Id.* at 882 (citing *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831–32 (Ala. 1999)).

Here, the Plaintiff has sufficiently pled the third and fourth elements listed in *Wood*.  The Amended Complaint states that the proceeding against him "ended in [his] favor and his conviction was set aside," and adds that the prosecution caused damage because his "career in law enforcement was destroyed, his reputation ruined in his former community and plaintiff was caused to incur substantial costs in the defense of this charge."  (Doc. # 18-1 at 2 ¶ 9.)  The key deficiency in the Amended Complaint as to this claim is the plausibility of the allegations that the particular individual Defendants in this case "instituted or continued" a criminal prosecution of the Plaintiff.

    **a.  None of the facts alleged by the Plaintiff create a plausible inference that either Defendant instituted or any manner initiated the judicial proceeding against the Plaintiff.**

In Alabama, a criminal prosecution begins in one of three ways: "finding an indictment, the issuing of a warrant or by binding over the offender."  Ala. Code § 15–3–7.  Here, the Plaintiff's prosecution began when he was indicted on June 12, 2003.  (Doc. # 1 at 3 ¶ 15.) Although the Plaintiff alleges that "Defendants initiated a judicial proceeding against the plaintiff without probable cause, and yet with malice" (Doc. # 18-1 at 2 ¶ 9), the Amended Complaint

does not allege sufficient facts to lead to the plausible inference that these remaining Defendants themselves in fact "initiated a judicial proceeding."

The Amended Complaint[4] makes no reference to actions by the remaining individual Defendants that were at all connected to bringing about the indictment of the Plaintiff. Insofar as the Defendants themselves are concerned, the Complaint alleges specifically that (1) both Defendants visited the Plaintiff's home in August 2002 (Doc. # 1 at 3 ¶ 11); and (2) "[w]ithout a warrant, Reynolds entered into Plaintiff's house and impounded his guns, including his wife's pistol, from the safe in which they were locked" (*Id.*). The Plaintiff does *not* allege that either Defendant was involved in any of the events that occurred on August 6, 2002, when the Plaintiff was asked to relinquish his badge and weapon and was transported back to his home by Montgomery police officers, who then seized his personal computer. (Doc. # 1 at 2–3 ¶ 10.) The Plaintiff further does not allege any facts that connect his indictment to either Defendant.

For these reasons, the Amended Complaint does not sufficiently allege the first element of the unreasonable seizure claim in this case—that "a criminal prosecution [was] instituted or continued *by the present defendant*." *Wood*, 323 F.3d at 882. While the Amended Complaint alleges that a judicial proceeding was instituted against the Plaintiff, it contains no factual allegations sufficient to create a plausible inference that the named Defendants were involved in initiating the proceeding, and thus it does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[4] The Amended Complaint (Doc. # 18-1) makes reference to and incorporates parts of the original Complaint (Doc. # 1), albeit in violation of M.D. Ala. Local Rule 15.1. Therefore, although the court is determining the legal sufficiency of the Amended Complaint, some citations will be to the original Complaint.

**b.  The claim also independently fails because none of the Plaintiff's allegations give rise to a plausible inference of malice on the part of either Defendant.**

The second element of the type of unreasonable seizure claim at issue here is that a judicial proceeding was instituted against the Plaintiff "with malice and without probable cause." Even giving the Plaintiff the benefit of assuming there was not probable cause, none of his factual allegations support the inference that either Defendant acted with malice.  The Plaintiff's allegations of malice take the form of "labels and conclusions," *id.*, which the court is not bound to accept because they amount to conclusory statements made without additional supporting factual allegations.

Specifically, the Amended Complaint alleges that (1) "Defendants initiated a judicial proceeding against the plaintiff without probable cause, and yet with malice" (Doc. # 18-1 at 2 ¶ 9); and (2) "Defendants acted willfully, maliciously, under a mistaken interpretation of the law . . . ." (*Id.* at 3 ¶ 12).  These allegations are not sufficient to sustain the claim of malice because "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

The factual allegations in the Amended Complaint, taken as true, fail to create a plausible inference that the Plaintiff is entitled to relief against these individual Defendants under the Fourth Amendment.  The Amended Complaint does not allege facts sufficient to satisfy the first prong of the Eleventh Circuit test for a § 1983 malicious prosecution claim. The Plaintiff's § 1983 claim of unreasonable seizure does not reach the threshold required by the Supreme Court in *Twombly* and *Iqbal*.

**c.  The Defendants are also entitled to qualified immunity.**

Because the Amended Complaint does not make out a legally sufficient Fourth Amendment claim, it is also appropriate to dismiss the claim on the basis of qualified immunity.

*See, e.g.*, *Epps v. Watson*, 492 F.3d 1240, 1243 (11th Cir. 2007) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

In assessing qualified immunity at the motion-to-dismiss stage, the court must determine, in whichever order it deems appropriate, "(1) whether the facts alleged make out a violation of a constitutional right; and (2) whether that right was 'clearly established' at the time of the alleged misconduct." *Bratt v. Genovese*, No. 8:13-CV-3210-T-36AEP, 2014 WL 6832644, at *2 (M.D. Fla. Dec. 3, 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Here, for the reasons discussed above, the facts alleged do not make out a violation of a constitutional right by these Defendants. The court cannot draw any plausible inferences from the facts alleged that the Defendants unreasonably seized the Plaintiff's person by instituting a judicial proceeding or in any other manner. And, even if the Amended Complaint could be read to allege a constitutional violation, it clearly does not allege violation of a clearly established right. Therefore, the Defendants are entitled to qualified immunity.

For these reasons, the Motion to Dismiss is due to be GRANTED as to the Plaintiff's § 1983 unreasonable seizure claim.

**B.  State Law Malicious Prosecution Claim**

In alleging a claim for state law malicious prosecution, the Amended Complaint asserts that the "City and the individual officers instituted a judicial proceeding against the plaintiff," and that they "did so without probable cause, and perpetuated the proceeding with evidence which was fabricated or altered by the City and while in its custody." (Doc. # 18-1 at 4 ¶¶ 21–22.) The individual Defendants argue that they are protected against this claim by state-agent

immunity under Alabama law.  This type of immunity is described in depth in *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), which specifies the situations in which state agents are immune from tort liability.  *Id.* at 405.  In *Cranman*, the Alabama Supreme Court restated the rule of state-agent immunity as follows: "A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's [activities falling within any one of several listed categories]."  *Id.* (emphasis in original).

Also relevant in this case is peace officer discretionary function immunity, as provided for in Ala. Code § 6–5–338.  The statute states that peace officers, as defined in the statute, "shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."  Ala Code. § 6–5–338(a).  The Alabama Supreme Court has incorporated this statutory immunity into the state-agent immunity doctrine described in *Cranman*.  In *Hollis v. City of Brighton*, 950 So. 2d 300 (Ala. 2006), it determined that the immunity provided to peace officers under § 6–5–338 was broader than the overlapping fourth category set out in *Cranman*, and expanded that category accordingly.  *Id.* at 309. Specifically, the court reasoned that:

> Given the divergence between the scope of the immunity granted by § 6–5–338(a)—"conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties"—and summarized in category (4) of the *Cranman* restatement—"exercising judgment in the enforcement of the criminal laws of the State ...."—we conclude that immune category 4 of the *Cranman* restatement should be expanded to restate the law of immunity in this area so as to reflect § 6–5–338(a).

*Id.*  After *Hollis*, the modified *Cranman* formulation of the fourth category of activities protected by state-agent immunity included situations where the agent was "(4) exercising judgment in the

enforcement of the criminal laws of the State, including, but not limited to, law-enforcement

officers' arresting or attempting to arrest persons, *or serving as peace officers under*

*circumstances entitling such officers to immunity pursuant to § 6–5–338(a), Ala. Code 1975.*"

*Id.* (emphasis of additional language in original).

Because statutory immunity under § 6–5–338 is treated as a subcategory of the broader

doctrine of state-agent immunity, the Alabama Supreme Court continues to apply the exceptions

to state-agent immunity listed in *Cranman* in cases in which statutory peace officer immunity is

implicated.  *See, e.g.*, *Ex parte Coleman*, 145 So. 3d 751, 757–58 (Ala. 2013); *Ex parte City of*

*Montgomery*, 99 So. 3d 282, 293–94 (Ala. 2012).  State-agent immunity does not apply:

> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Cranman*, 792 So. 2d at 405.

State-agent immunity is analyzed using a burden shifting test, as described in *Ex parte*

*Estate of Reynolds*, 946 So. 2d 450 (Ala. 2006):

> In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.

*Id.* at 452.  In this case, the Plaintiff argues that the Defendants acted willfully and maliciously

and does not argue that the Defendants' activities fell outside "the line and scope of his or her

law enforcement duties."  § 6–5–338(a).  The court presumes that the Plaintiff concedes this

point, and further finds that the activities alleged in the Amended Complaint, entering the

Plaintiff's home while on duty and seizing weapons, do "arise from a function that would entitle

the State agent to immunity." *Ex parte Estate of Reynolds*, 946 So. 2d at 452.   The Defendants

have made their showing by arguing that the Plaintiff does not dispute they were employed as

law enforcement officers and that "[t]heir involvement in any investigation or arrest would be in

their capacity as law enforcement officers."  (Doc. # 30 at 6.)  Therefore, the burden shifts to the

Plaintiff to show in his Amended Complaint that he can make out a claim that the Defendants

"acted willfully, maliciously, fraudulently, in bad faith, or beyond [their] authority." *Ex parte

Estate of Reynolds*, 946 So. 2d at 452.

   The Plaintiff does in fact allege that the Defendants acted in this manner.  However, for

the same reasons discussed in regards to the federal § 1983 claim above, the Amended

Complaint does not state factual allegations giving rise to a plausible inference that the

Defendants acted with malice.  The Plaintiff argues that "[c]osting a man his profession and his

personal freedom by fabricating evidence is the essence of an act 'committed willfully,

maliciously, and outside the scope of [the Defendants'] authority.'"  (Doc. # 34 at 6.)  The

problem with this argument is that nothing in the Complaint links these individual Defendants to

the allegedly fabricated evidence.  Accepting as true the allegation that *someone* fabricated

evidence on the Plaintiff's computer, there are no allegations that connect the fabrication to the

Defendants.  As discussed above, the only specific actions by these Defendants listed in the

Amended Complaint are their arrival at the Plaintiff's home during the month after the Plaintiff's

computer was seized and the seizure of personal weapons from the home.  Ultimately, all

allegations of malice on the part of the Defendants amount to legal conclusions or mere

speculation without additional supporting factual assertions.  (*See* Doc. # 18-1 at 5 ¶¶ 23, 25

(alleging in a conclusory fashion that the Defendants instituted a judicial proceeding without

probable cause and that they acted "willfully and with malice" and that they acted "willfully,

maliciously, under a mistaken interpretation of the law and/or outside their authority after the statute of limitations had expired and with evidence they knew to be fabricated")).

For these reasons, the court finds that the Defendants were acting within the scope of their discretionary functions as peace officers, and that, taking the factual allegations in the Amended Complaint as true, none of the allegations give rise to an inference that the Defendants acted maliciously.  Therefore, the Defendants are entitled to state-agent immunity under Alabama case law and § 6–5–338, and the Motion to Dismiss will be GRANTED as to the Plaintiff's state law malicious prosecution claim.

## V. CONCLUSION

For the stated reasons, it is hereby ORDERED that the Motion to Dismiss (Doc. # 30) is GRANTED, and all remaining claims against Defendants Jamie Reynolds and Gary Hicks are DISMISSED with prejudice.

DONE this 23rd day of April, 2015.

/s/  W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE